**SIGNED this 14 day of December, 2006.**

_Marcia P. Parsons_
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re | |
| JOHN PAUL MOORE | No. 06-50573 |
| | Chapter 13 |
| Debtor. | |
| – and – | |
| In re | |
| CINDY MICHELLE SEABOLT | No. 06-50794 |
| | Chapter 7 |
| Debtor. | |

### M E M O R A N D U M

APPEARANCES:

T. Wood Smith, Esq.
416 W. Main Street
Greeneville, Tennessee  37743
*Counsel for Debtor*

Gwendolyn M. Kerney, Esq.
P.O. Box 228
Knoxville, Tennessee 37901
*Chapter 13 Trustee*

Cindy Michelle Seabolt
1070-2 Old Union Road
Church Hill, Tennessee  37642
*Pro Se*

Patricia C. Foster, Esq.
Howard H. Baker, Jr. U.S. Courthouse
800 Market Street, Suite 114
Knoxville, Tennessee 37902
*Counsel for the United States Trustee*

**MARCIA PHILLIPS PARSONS**
**UNITED STATES BANKRUPTCY JUDGE**

These chapter 13 and chapter 7 cases are before the court on motions to dismiss pursuant to 11 U.S.C. § 109(h)(1) by the chapter 13 trustee and the United States trustee, respectively. Both cases present the issue of whether 11 U.S.C. § 109(h)(1) requires a debtor to receive a credit counseling briefing at least one day before filing a bankruptcy petition or simply prior to the moment of filing the petition, so long as the 180-day outside limit is otherwise met. Because this court concludes the latter, the motions will be denied. This is a core proceeding. *See* 28 U.S.C.§ 157(b)(2)(A).

## I.

On July 11, 2006, at 10:33 p.m., John Paul Moore electronically filed for bankruptcy relief under chapter 13. Simultaneously with the filing of his petition, Mr. Moore filed his credit counseling certificate, dated that same day. According to affidavits filed by Mr. Moore, his attorney T. Wood Smith, and Mr. Smith's assistant Tammy Bowman in response to the chapter 13's motion to dismiss, Mr. Moore had a foreclosure pending on the morning of July 12, 2006. He met with attorney Smith on July 10, 2006 and they agreed that Mr. Moore would obtain credit counseling on July 11, 2006, and then file for bankruptcy relief on July 12, 2006, before the foreclosure sale. Mr. Moore obtained his credit counseling briefing on July 11, 2006, as planned, and signed his petition and schedules on July 11, 2006, intending for his petition to be filed the next day. Ms. Bowman, who was working late for Mr. Smith on the evening of July 11, 2006, determined that all of the documents necessary to file Mr. Moore's case had been prepared and then electronically filed Mr. Moore' bankruptcy case. Ms. Bowman attested that she had not received instructions from Mr. Smith to file the case but had worked for him for nine years and "was accustomed to performing work without the requirement of being told each and every thing to do." A few minutes after she filed the case Ms. Bowman learned from Mr. Smith that he had not intended to file the petition until the next day, July 12, 2006.

Cindy Michelle Seabolt filed for bankruptcy relief under chapter 7 on September 5, 2006, at 3:10 p.m. During the hearing on the United States trustee's motion to dismiss, Ms. Seabolt, who appeared *pro se*, testified that she learned of the prerequisites for filing a chapter 7 bankruptcy petition from the United States Courts' website and assumed that the requirement to complete credit counseling prior to filing a bankruptcy petition only meant at any time prior to filing, not necessarily

2

at least one day prior to filing.[1]  Ms. Seabolt stated that she began her credit counseling briefing via the Internet on the evening of September 4, 2006, between 10:30 p.m. and 11:30 p.m. and did not finish until after midnight.  She then went to bed for the night and, after receiving her credit counseling certificate by email late the next morning, filed her bankruptcy case in the afternoon.  According to her filed certificate of counseling, Ms. Seabolt completed her credit counseling briefing at 1:41 a.m. on September 5, 2006.

In Mr. Moore's bankruptcy case, the chapter 13 trustee Gwendolyn M. Kerney filed a motion to dismiss on August 23, 2006, and a brief in support thereof on October 2, 2006, asserting that Mr. Moore is ineligible to be a debtor under 11 U.S.C. § 109(h)(1) because he received his credit counseling briefing on the same day that he filed for bankruptcy relief.  In Ms. Seabolt's case,  the United States trustee filed a similar motion to dismiss on September 8, 2006, and subsequently filed a statement adopting and incorporating the brief filed by Ms. Kerney in Mr. Moore's case.  The position of both the chapter 13 trustee and the United States trustee is that 11 U.S.C. § 109(h)(1) requires an individual to obtain credit counseling on any day within 180 days prior to, but not including, the day upon which the bankruptcy petition is filed and that because the debtors herein obtained their briefings on the same day as their bankruptcy filings, albeit prior to the filings, their cases must be dismissed.

II.

Resolution of the motions to dismiss turns on the interpretation of 11 U.S.C. § 109(h)(1), which was enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, § 106, 119 Stat. 23, 37.  This provision states in part:

> [A]n individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related

---

[1] The court notes that Official Bankruptcy Form 1, Exhibit D, entitled "Individual Debtor's Statement of Compliance with Credit Counseling Requirement," requires a certification from each individual debtor (absent the availability of a temporary waiver or exemption) that "[w]ithin the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency . . . ." (Emphasis in original.)

budget analysis.

Not surprisingly, there is already a split of authority on the issue at hand.  The trustees urge this court to adopt the decision by Bankruptcy Judge Richard Stair Jr. of this district,  *In re Cole*, 347 B.R. 70 (Bankr. E.D. Tenn. 2006), along with those of the court in *In re Murphy*, 342 B.R. 671 (Bankr. D.D.C. 2006), and *In re Mills*, 341 B.R. 106 (Bankr. D.D.C. 2006), both authored by the same judge.  The debtors' position, on the other hand, rests upon the holdings of *In re Warren*, 339 B.R. 475 (Bankr. E.D. Ark. 2006);  *In re Hudson*, ___ B.R. ___, 2006 WL 2689699 (Bankr. D. Md. Sept. 16, 2006); *In re Spears*, ___ B.R. ___, 2006 WL 3017364 (Bankr. E.D. Wis. June 19, 2006), and *In re Toccaline*, No. 06-20218, 2006 WL 2081517 (Bankr. D. Conn. July 17, 2006).

In the *Cole* decision, the bankruptcy court relied on the dictionary definitions of the words "date," "filing," and "preceding," along with its reading of the phrase "during the 180-day period preceding the date of filing of the petition by such individual" as a whole, to hold that "the court can come to no other conclusion that the plain, ordinary meaning is that a debtor must, in order to comply with §109(h)(1), complete the required counseling briefing on any day within 180 days prior to but not including the date upon which his or her bankruptcy petition is filed." *In re Cole*, 347 B.R. at 74.  According to the *Cole* court, "[t]his analysis comports with the notion that . . . 'the [Bankruptcy] [C]ode is not concerned with a particular time of day, but rather the entire day.'" *Id.* at 74-75 (quoting *Belford v. Union Trust Co.* (*In re Wild Bills, Inc.*), 206 B.R. 8, 16 (Bankr. D. Conn. 1997) (calculating the relevant dates concerning a setoff under 11 U.S.C. § 553(b)(1)), and citing *Lester v. S. Mills, Inc.* (*In re Terry Mfg. Co.*), 325 B.R. 638, 642 (Bankr. M.D. Ala. 2005) (holding that the 90-day preference period of 11 U.S.C. § 547(b)(4)(A) is calculated by counting backward from, and excluding, the petition date)).  The *Cole* court observed that "[w]ith very limited exceptions, . . . common law legal systems have long reckoned periods of legal significance by the calendar, not by the clock," *id.* at 75, and noted that the United States Supreme Court, in analyzing tax assessment statutes, has stated:

> We are seeking a measure of time . . . and when, as here, there is no special reason for being more precise, the day is the unit, because people generally measure periods of more than one day by days, months or years. . . . "When the period allowed for doing an act is to be reckoned from the making of a contract, or the happening of any other event, the day on which the event happened may be regarded as an entirety, or a point of time; and so may be excluded from the computation." . . .

*Id.* (quoting *Burnet v. Willingham Loan & Trust Co.*, 282 U.S. 437, 441, 51 S. Ct. 185, 186 (1931)).

The *Cole* court reasoned that its "interpretation also falls in line with Rule 9006 of the Federal Rules of Bankruptcy Procedure" and that "[w]hile the court does not make a determination that Rule 9006(a) applies to § 109(h), many courts have applied the principle of calculating the time period 'by excluding the day of the event from which the period begins to run and including the final day of the period.'" *Id.* at 76 (citing *MBNA Am. v. Locke* (*In re Greene*), 223 F.3d 1064, 1069 (9th Cir. 2000) (analyzing Rule 9006 with respect to preference issues)). *See also In re Murphy*, 342 B.R. at 673; *In re Mills*, 341 B.R. at 107 (both holding that the plain meaning of the word "date" is calendar day and citing various state court decisions for the proposition that "when a statute requires an act to be done within a specified number of days prior to a fixed date, the last day, namely, the fixed date, is to be excluded in making the calculation").

Lastly, the *Cole* court concluded that its "interpretation meshes with the intentions of Congress when it enacted BAPCPA." *In re Cole*, 347 B.R. at 76. Although noting that resort to legislative history was unnecessary in light of its conclusion that the statute was "clear and unambiguous," the court nonetheless found the history to be instructive. From the *Cole* court's examination of the statements contained therein, it determined that:

> Congress intended for prospective debtors to obtain their required counseling at a point in time far enough in advance of filing that they would at least be educated as to the consequences of bankruptcy. This purpose would be thwarted by allowing a debtor to obtain a pre-petition counseling briefing on the same day that a bankruptcy petition is filed."

*Id.* at 77.

In contrast to *Cole*, the bankruptcy court in *Warren* interpreted the words "date of filing" as used in § 109(h)(1) to mean the specific day, month, year and time of day the petition is filed, noting that "[i]n bankruptcy, the exact time of filing is a critical bright line in determining property rights of debtors and creditors. At the moment a petition for relief is filed, the automatic stay goes into effect, affording the debtor an extra measure of protection from the legal maneuvers of his creditors." *In re Warren*, 339 B.R. at 480. The *Warren* court found support for its interpretation in the statute's legislative history, observing that the House Report simply specifies that the debtor receive a credit counseling briefing within the 180 days prior to the bankruptcy filing and "[n]othing

5

in the legislative history suggests that Congress contemplated at least a one-day waiting period after completion of credit counseling . . . ." *Id.*

The courts in *Hudson* and *Spears* found *Warren*'s "bright line" conclusion persuasive. The *Hudson* court began its analysis by observing that there was some ambiguity in §109(h)(1), in that while "date" usually means "day, month and year," it can also mean "the time so specified" or "moment in time." *In re Hudson*, 2006 WL 2689699, *2-4 (citing *Black's Law Dictionary* (5th ed. 1979)). In light of this ambiguity, the court looked at how the term was used elsewhere in the Bankruptcy Code, stating "[a]bsent compelling reasons to the contrary, it should be presumed that Congress intended the term 'date' to have the same meaning in one section of the Bankruptcy Code as another." *Id.* at *3. The *Hudson* court first examined 11 U.S.C. § 348(f)(1)(A), which provides that when a case under chapter 13 is converted to a case under another chapter, property of the estate in the converted case shall consist of property of the estate "as of the date of filing of the petition." According to the court, "date" in this context identifies a moment in time, that is, the moment of the petition filing because a bright line is needed to identify the rights of parties and what is and is not property of the estate. The court also looked at the interplay between 11 U.S.C. §§ 547 and 549, noting that under § 547(b)(4)(A), a trustee is authorized to recover transfers made "on or within 90 days before the date of the filing of the petition," while § 549(a)(1) authorizes the trustee to avoid a transfer "that occurs after the commencement of the case." According to the *Hudson* court, "[t]he failure to observe a bright line rule to identify avoidable transfers under Section 547 would permit a gap to arise between midnight and the actual time the petition was filed." *Id.* Consequently, the court concluded that "[i]n the context of the Bankruptcy Code, the term 'date' appears to identify a moment in time, rather than a span of time." *Id.* "[A] moment in time is incorporated into the term "date" when it refers to the filing of a petition to provide certainty and a bright line. It does not advance the design of the bankruptcy code to adopt a more imprecise definition of date. . . ." *Id.* at *5.

The *Hudson* court rejected the *Cole* court's interpretation of § 109(h)(1) because "it did not address specifically the meaning and use of the word 'date' within the Bankruptcy Code." *Id.* at *4. Furthermore, in the *Hudson* court's view:

Mills and Cole rest upon an interpretation of the phrase "during the 180-day period

6

preceding the date of filing the petition" which focuses on whether the date of filing should be included in the 180-day period. This court, however, respectfully concludes that the proper focus is on the meaning of the term "date' in relation to the filing of the petition, because Section 109(h)(1) sets a deadline for credit counseling that must be accomplished for a debtor to be eligible to file a petition. It is not measuring the period of time that is at issue here; rather, it is the deadline by which credit counseling must be accomplished.

*Id.* at *5.

Unlike the *Cole* court, the *Hudson* court concluded that § 109(h)'s legislative history was not dispositive, observing that it only indicates that a debtor must have a credit counseling briefing *before* he or she can file a bankruptcy case and that there is no discussion of the word "date." *Id.* at *3. The *Hudson* court rejected the argument raised therein that Congress intended a prospective debtor to receive a credit counseling briefing at least one day before bankruptcy eligibility in order to allow the individual to sleep on his decision to file a bankruptcy petition. The court pointed out that there was no support for this proposition in the statute's legislative history and that such an objective was untenable in this world of electronic filing where credit counseling briefings are available online and bankruptcy petitions can be filed 24 hours a day, seven days a week. *Id.* at *5.

After careful consideration, this court finds itself in agreement with *Hudson*, *Warren* and *Spears* and respectfully disagrees with *Cole*, *Murphy* and *Mills*. As recognized by both set of cases, the first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning. *Vergos v. Gregg's Enterprises, Inc.*, 159 F.3d 989, 990 (6th Cir. 1998). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 117 S. Ct. 843, 846 (1997). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." *Greenbaum v. E.P.A.*, 370 F.3d 527, 535-36 (6th Cir. 2004).

Notwithstanding the plainness of the language used in § 109(h)(1), its meaning is susceptible to two different interpretations, as the various courts' disagreement illustrates. *See* Daniel J. Bussel,

*Textualism's Failures: A Study of Overruled Bankruptcy Court Decisions*, 53 Vand. L. Rev. 887, 894-98 (April 2000) (observing the incongruity of the Supreme Court's decision in *United States v Ron Pair Enters., Inc.*, 489 U.S. 235, 109 S. Ct. 1026 (1989), which was based on the plain meaning of the phrase "interest on such a claim" in § 506(b) of the Bankruptcy Code that "[could not] be read in any other way" according to the majority, even though the majority's ruling was rejected by four dissenting justices and a split in the circuits had led to the Court's consideration of the issue). While "date" usually means "calendar date," it also often means "a specified time." *See Black's Law Dictionary* (8th ed. 2004) ("**date. 1.** The day when an event happened or will happen < date of trial >. **2.** A period of time in general < at a later date >. **3.** An appointment at a specified time < no dates are available >."). Substitution of each of these two meanings into § 109(h)(1) results in the phrase reading "the 180-day period preceding the 'day' of filing of the petition" or "the 180-day period preceding the 'moment' of filing of the petition," both "commonsense" and "straightforward" interpretations. *See In re Laurain*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner.").

Nonetheless, the "180-day" phrase must be read in context with the clause that proceeds it: "an individual may not be a debtor under this title unless such individual has, during the 180-day . . . ." This language is instructive because it reminds us that this is an eligibility provision, just like other eligibility requirements in § 109 of the Bankruptcy Code, defining who is eligible for bankruptcy relief. Eligibility is determined as of the filing of the petition. *See, e.g., In re Global Ocean Carriers Ltd*, 251 B.R. 31, 37 (Bankr. D. Del. 2000) ("The test for eligibility is as of the date the bankruptcy petition is filed."). As the court in *Hudson* astutely recognized:

> [T]he proper focus is on the meaning of the term "date' in relation to the filing of the petition, because Section 109(h)(1) sets a deadline for credit counseling that must be accomplished for a debtor to be eligible to file a petition. *It is not measuring the period of time that is at issue here; rather, it is the deadline by which credit counseling must be accomplished.*

*In re Hudson*, 2006 WL 2689699, *5 (emphasis supplied). A reading of § 109(h)(1) in its entirety along with Congress' placement of the credit counseling briefing requirement in § 109 of the Bankruptcy Code as a determination of bankruptcy eligibility indicates that Congress' focus was on ensuring, at the time of the bankruptcy filing, that the individuals seeking bankruptcy relief had

previously undergone credit counseling.   Thus, considered in its context of § 109's eligibility requirements, the more likely plain meaning of "date" as used in § 109(h)(1) appears to be the less common, but still often used definition, that of moment or specific time.

This definition of "date" and "date of filing" is also consistent with other instances in the Bankruptcy Code and BAPCPA where Congress used "date of filing" to refer to moment or specific time of filing rather than calendar day on which the bankruptcy occurred.   *See Greenbaum*, 370 F.3d at 535-36 (quoting *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860, 106 S. Ct. 1600, 1606 (1986)) ("The normal rule of statutory construction assumes that 'identical words used in different parts of the same act are intended to have the same meaning.'").   In addition to the statutory provisions cited by the *Hudson* court, 11 U.S.C. § 522(p) added by BAPCPA  prohibits a debtor from exempting any amount of interest that he or she acquired "during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value . . . ."  Exclusion of the entire day of the bankruptcy filing from the quoted provision would produce the anomalous result of permitting an exemption of an interest acquired on the same day of the bankruptcy filing, but not  an interest acquired in the preceding forty months.  Thus, it would appear that in this instance, date means "moment of filing."

Similarly, the now infamous "hanging paragraph" at the end of 11 U.S.C. § 1325(a) refers to debts "incurred within the 910-day [period] preceding the date of the filing of the petition."  If date of filing is defined in this provision as the entire 24-hour period during which the bankruptcy filing takes place, a motor vehicle purchased on the morning of an afternoon bankruptcy filing would fall outside the protections otherwise provided a 910 creditor.  Section § 1307(c)(1) of the Bankruptcy Code provides as a basis for the dismissal of a chapter 13 case the "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition," while § 1325(a)(8) provides as a confirmation requirement that the debtor be current on domestic support obligations "that first become payable after the date of the filing of the petition." In these contexts, "date of filing" appears to mean moment of filing.  Otherwise, a domestic support obligation incurred on the day of, but prior to the actual moment the bankruptcy petition is filed would be excluded, plainly an illogical outcome.  Additionally, § 1308(b)(1) authorizes a chapter 13 trustee to hold open a meeting of creditors for a reasonable time if the debtor's tax returns "have

not been filed by the date on which the meeting of creditors is first scheduled." Again, date would appear to mean the specific time the meeting is scheduled rather than the calendar day, since the trustee would not know at the meeting whether to continue the meeting if the debtor has until the end of the calendar day on which the meeting is scheduled to file the required tax returns. The foregoing examples not only illustrate that the term "date of filing" is often used in the Bankruptcy Code to mean the moment of filing, but they also demonstrate that Congress sometimes used the phrases "preceding the date of filing" and "after the date of filing" to simply mean before the bankruptcy filing and after the bankruptcy filing. And, as recognized by the courts in *Warren* and *Hudson*, defining "date of filing" as moment of filing is consistent with the overall critical importance in the bankruptcy context of the precise time at which an individual or entity becomes a debtor, in contrast to the presumably, less significant "date" determination in tax assessment and state law issues addressed in the cases cited in *Cole*. *See In re Cole*, 347 B.R. at 75.

Furthermore, although this court believes that the appropriate reading of § 109(h)(1) is ascertainable from both its language and context, the sparse legislative history to the provision also supports the determination that rather than mandating an artificial time frame period during which credit counseling must occur, Congress' focus in § 109(h)(1) was on imposing a new eligibility requirement which must be satisfied at the bankruptcy filing deadline. As stated in the 2005 House Report of the Judiciary Committee:

> Section 106(a) of the Act amends section 109 of the Bankruptcy Code to require an individual–as a condition of eligibility for bankruptcy relief–to receive credit counseling within the 180-day period preceding the filing of a bankruptcy case by such individual. The credit counseling must be provided by an approved, nonprofit budget and credit counseling agency consisting of either an individual or group briefing (which may be conducted telephonically or via the Internet) that outlines opportunities for available credit counseling and assists the individual in performing a budget analysis. . . .

H.R. REP. NO. 109-31(I), at 55 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 125. Under the "Purpose and Summary" section, the House Report explains that BAPCPA "requires debtors to receive credit counseling before they can be eligible for bankruptcy relief so that they will make an informed choice about bankruptcy, its alternatives, and consequences." *In re Cole*, 347 B.R. at 76 (quoting H.R. REP. NO. 109-3(I), at 1 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 89). Under the subtitle

"Consumer Creditor Bankruptcy Protections, " the House Report states:

> Most importantly, S. 256 requires debtors to participate in credit counseling programs before filing for bankruptcy relief (unless special circumstances do not permit such participation). The legislation's credit counseling provisions are intended to give consumers in financial distress an opportunity to learn about the consequences of bankruptcy–such as the potentially devastating effect it can have on their credit rating–before they decide to file for bankruptcy relief.

*In re Cole*, 347 B.R. at 76-77 (quoting H.R. REP. NO. 109-31(I), at 18 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 104).

This court respectfully disagrees with the *Cole* court's conclusion that these legislative history statements evidence Congress' intent that the credit counseling briefing be obtained on a day other than the day the bankruptcy filing occurred. *Id.* at 77. To the contrary, they disclose no time requirement other than the one common to all bankruptcy eligibility prerequisites, that the counseling occur by the bankruptcy filing. *Cf. In re Mills*, 341 B.R. at 109 ("These excerpts do not suggest a position one way or the other with respect to the language of timing contained within §109(h)."); *In re Hudson*, 2006 WL 2689699, *4 ("[Legislative history] leaves the door [of intention] open.").

As discussed in *Warren* and as the facts of the present cases demonstrate, if Congress had intended a waiting period in order to give a prospective filer a day's contemplation regarding the counseling before eligibility to file arrives, the language chosen does not produce this result in this electronic age, if date is construed to mean calendar date. According to a recent study, one-fourth of credit counseling briefings are conducted via the Internet and from the debtor Seabolt's testimony, apparently around the clock. *See* National Foundation for Credit Counseling's Annual Report dated Oct.16, 2006, *Consumer Counseling and Education under BAPCPA*, at www.nfcc.org. Similarly, bankruptcy cases can be filed electronically, 24 hours a day. Thus, a debtor who finishes a credit counseling briefing at 11:59 p.m. and then files her bankruptcy cases two minutes later will satisfy the trustee's interpretation of eligibility, but a debtor who finished a credit counseling briefing at 12:01 a.m. and then files 23 hours and 58 minutes later would not, even though the latter situation provided this debtor a longer contemplation period and would even permit him or her to "sleep on" the decision. The illogic of such a requirement is demonstrated in each of the two cases before this

11

court.  If the legal assistant in the office of Mr. Moore's attorney had waited another one and one-half hours before electronically filing his case, no argument of untimeliness could be raised.  On the other hand, Ms. Seabolt actually did sleep on her decision after completing her briefing before she decided to file bankruptcy, but because she finished her briefing a short time after midnight rather then the requisite minimum of one minute before midnight, she too would be ineligible to be a debtor in the objecting trustees' view.  Congress surely could not have intended such a result.  It knew of electronic filing in the bankruptcy court.  *See* 151 Cong. Rec. S1834-01 (daily ed. March 1, 2005) (statement of Sen. Leahy) (discussion regarding protection of sensitive information filed with a bankruptcy court as being "particularly important in an electronic filing environment").  Similarly, it permitted the credit counseling briefings to occur on the Internet as provided in § 109(h).  In light of this knowledge and considering the impossibility of ensuring a 24-hour waiting period merely by directing that a credit counseling briefing take place at least the day before the filing, this court can only conclude that if Congress had intended that a waiting period occur, it would have more explicitly set forth its intention in the statute itself or in its legislative history.

The trustees herein argue that Rule 9006 of the Federal Rules of Bankruptcy Procedure applies in computing the 180-day time period of § 109(h)(1).  Rule 9006(a) states:

> In computing any period of time prescribed or allowable by these rules or by the Federal Rules of Civil Procedure made applicable by these rules, by the local rules, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included . . . .

According to the trustees, this rule dictates that the day of the bankruptcy filing be excluded in determining the allowable time for obtaining credit counseling under § 109(h)(1).

As explained in the treatise *Collier on Bankruptcy*:

> Bankruptcy Rule 9006(a) establishes the method of computing "any period of time prescribed or allowed . . . by any applicable statute." Civil Rule 6(a) contains identical language.
>
> In determining what statutes are "applicable" and, hence, to be construed in light of Rule 9006(a), it is necessary to consider the scope of the rules themselves. Rule 1001 provides that the Bankruptcy Rules "govern procedure in cases under title 11 of the United States Code." Section 2075 of title 28 states that the Bankruptcy Rules "shall not abridge, enlarge, or modify any substantive right." It follows, then, that Rule 9006(a) does not provide a general rule of statutory construction which the courts are bound to apply to all time periods mentioned in any statute that may come

before the court, nor does the rule apply to time periods mentioned in other documents, such as contracts.

10 *Collier on Bankruptcy* ¶ 9006.04 (15th ed. rev. 2006).

In *Martin v. First Nat'l Bank of Louisville* (*In re Butcher*), 829 F.2d 596 (6th Cir. 1987), the Sixth Circuit Court of Appeals concluded that Rule 9006(a) does not apply to the computation of the statute of limitations period set forth in § 546(a) of the Bankruptcy Code which, at that time, required avoidance actions to be commenced within two years after the appointment of the trustee. As such, the court held that the two-year limitations period expired exactly twenty-four months after the trustee's appointment even if the last day fell on a Saturday, Sunday, or holiday, notwithstanding the directive in Rule 9006(a) that if the last day of a period falls on one of these specified days, the period runs until the end of the next day which is not a Saturday, Sunday or holiday. *Id.* at 601. To hold otherwise, according to the court, would enlarge a trustee's substantive rights and thus impermissibly extend the jurisdiction of the bankruptcy courts, contrary to 28 U.S.C. § 2075. *Id.* at 600. The court concluded that Rule 9006(a)'s computation is limited to the governance of "procedural matters after a proceeding has been timely commenced." *Id.* at 601. *See also In re Bernstein*, 189 B.R. 113 (Bankr. W.D. Va. 1995) ("Rule 9006(a) is a procedural rule that governs the computation of time for doing some act in the course of a bankruptcy proceeding.").

Applying this analysis to the present case, it is clear that § 109(h)(1) governs not the period of time for doing an act after a bankruptcy case is commenced but rather describes the requisite time for taking a step to establish eligibility to file a case in the first instance, much like the time for filing a complaint to satisfy a statute of limitations. Application of Rule 9006(a) to § 109(h)(1), thereby eliminating the day the credit counseling briefing is obtained as a day on which one can file for bankruptcy relief, would impermissibly abridge an individual's substantive right to file bankruptcy, in derogation of 28 U.S.C. § 2075.

Lastly, this court recognizes, as argued by the trustees herein, that its ruling in this case may result in forum shopping in this district since it is contrary to Judge Stair's decision in *Cole*. While that is a regrettable outcome, this court may not, simply for the sake of uniformity, absolve itself of its own responsibility to independently analyze and interpret the Bankruptcy Code. Furthermore,

13

if improper forum shopping based on different interpretations of the law by the judges in this district occurs, such improprieties can always be addressed by the court.

III.

In accordance with the foregoing, the court will enter an order denying the motions to dismiss.

# # #